CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JAN 30 2018

JULIA C. DUDLEY, CLERK
BY: /s/ H McDracc
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GARY WALL, <br>     Plaintiff, | Civil Action No. 7:16-cv-00373 |
| v. | **MEMORANDUM OPINION** |
| N. STEVENS, et al., <br>     Defendants. | By:   Hon. Jackson L. Kiser <br>          Senior United States District Judge |

Gary Wall, a Virginia inmate proceeding pro se, commenced this civil rights action pursuant to 42 U.S.C. §§ 1983 and 1985. Plaintiff names numerous staff of the Red Onion State Prison ("Red Onion") as defendants. Plaintiff alleges that prison staff violated federal and state law by retaliating against him, imposing cruel and unusual punishment, not providing adequate process, negligently investigating Plaintiff's accusations, and being willfully and wantonly negligent. Defendants filed a motion for summary judgment, arguing, inter alia, the defense of qualified immunity. Plaintiff responded in opposition and filed a cross motion for summary judgment, making the matter ripe for disposition.[1] After reviewing the record, I find that disputes of material facts preclude summary judgment for Plaintiff and also preclude qualified immunity and summary judgment for the retaliation claims against defendants Vaughan, Stevens, McCowan, and O'Quinn and for the supervisory claims against defendants Lt. Gilbert

---

[1] Plaintiff filed a timely response (ECF No. 37) that I will consider. Plaintiff also filed an untimely response and did not seek permission to file out of time pursuant to Fed. R. Civ. P. 6(b)(1)(B). The Supreme Court has made clear that even pro se litigants must follow rules of civil procedure. McNeil v. United States, 508 U.S. 106, 113 (1980); see Cichon v. Exelon Generation Co., L.L.C., 401 F.3d 803, 809-10 (7th Cir. 2005) (recognizing a district court may ignore and not consider additional facts a litigant proposes in violation of court orders or rules of procedure). Furthermore, Plaintiff cannot use a response to a motion for summary judgment to amend or correct the complaint challenged by the motion for summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009). Accordingly, I will not consider Plaintiff's untimely response to the motion for summary judgment, and to the extent those documents present new claims that accrued after the second amended complaint, he is free to file those claims in a new and separate action.
    Plaintiff also filed a motion to amend and attached a proposed third amended complaint. The motion to amend seeks only to make two brief corrections to the second amended complaint. Accordingly, I grant the motion to amend only to the extent the corrections are noted as to the second amended complaint. I do not accept the proposed third amended complaint, which was filed after Defendants filed their motion, because it is unnecessary at the present stage to renew the pleading.

and Sgt. Hall. Accordingly, I deny Plaintiff's motion for summary judgment, grant in part and deny in part Defendants' motion for summary judgment, and the defendants may file additional briefing as to the state law and remaining federal law claims.

## I.

Plaintiff was not escorted out of his segregation cell to enjoy recreation or showers on January 20 and 30, February 17 and 27, and March 11 and 12, 2016.[2] Defendants Vaughan, Stevens, McCowan, and O'Quinn were the correctional officers who allegedly refused to escort Plaintiff to recreation and showers.[3] Vaughan, Stevens, McCowan did not escort Plaintiff allegedly because he did not perform the strip search procedure satisfactorily.[4] No staff other than Vaughan, Stevens, and McCowan ever gave Plaintiff any issue about his performance of the strip search procedure.

The stripe search procedure is designed to discover contraband, to ensure the safety of staff and inmates, and to maintain discipline. During a strip search, two officers stand at the cell door and order the inmate to move to the back of the cell so staff may visually inspect his hands. The inmate then removes all clothing and passes it to an officer for inspection. Staff orders the naked inmate to move to the center of the cell for observation. Staff visually inspects the inmate's head, hair, mouth, torso, legs, and feet. To facilitate this inspection, the inmate must

---

[2] Plaintiff alleged in the second amended complaint that the deprivations of showers and recreation occurred on different days. However, Plaintiff clarifies in his response to the motion for summary judgment that it is prison practice to forfeit both showers and recreation when the inmate is prohibited from enjpying one of the two privileges. Accordingly, I will consider both recreation and showers to have been deprived on the same day.
[3] Plaintiff acknowledges that "[a]t no time prior to writing[the] Informal Complain . . . on [January 19, 2016] did defendants" Stevens, Vaughan, McCowan "allege Plaintiff 'failed' or 'refused' to comply with strip-search procedures to exit my cell for ANY reason."
N. Steve
[4] O'Quinn allegedly refused to escort Plaintiff with McCowan on February 17, although no strip search procedure was performed.

2

open his mouth, raise his arms, turn completely around, spread his legs, raise his penis and testicles, turn around to face the back of the cell, spread his buttocks, bend over, squat, and cough. The inmate's inspected clothes are returned. If the inmate completed the inspection satisfactorily, he would be restrained and removed from the cell.

Inmates at Red Onion perform the strip search procedure each time before they leave their cells.[5] Upon returning to their cells, inmates are frisked and do not again perform the strip search procedure.

Plaintiff alleges that Vaughan, Stevens, McCowan and defendant O'Quinn conspired and used the strip search procedure as retaliation after Plaintiff filed complaints about their denying him recreation and showers. Inf.compl. #132

Plaintiff also alleges that Vaughan, Stevens, and McCowan made Plaintiff perform the strip search procedure already knowing they would deny him recreation and showers anyway. Stevens allegedly retaliated also by issuing to Plaintiff a false disciplinary charge. Stevens, Vaughn, and McCowan allegedly admitted to Plaintiff that the retaliation was because he called the Prison Rape Elimination Act ("PREA") Sexual Assault Hotline on January 17 and February 5 and filed an informal complaint on January 19. Both the calls and the informal complaint would be routed to the pod staff responsible for Plaintiff's housing.

Plaintiff faults several supervisory officials. Plaintiff allegedly told defendants Lt. Gilbert and Sgt. Hall on January 20 about Vaughan, Stevens, McCowan, and O'Quinn's

---

[5] Red Onion is a "Level-S," (ie., segregated) correctional facility that houses inmates who are classified as high security risks. Many of the inmates incarcerated in segregation at Red Onion they are disruptive, assaultive, have severe behavioral problems, demonstrate predatory-type behaviors, and are escape risks. Red Onion generally provides maximum security supervision and a high level of physical restraint to maintain control, prevent escapes, minimize risk of staff and inmate injury, and maintain orderly institutional operations.

allegedly unlawful acts, but nothing was done. Lt. Gilbert responded to the informal complaint, noting on January 29 that there was no evidence to support a "procedural violation" for the strip searches. Lt. Gilbert observed Plaintiff perform the strip search procedure on March 10 and acknowledged that Plaintiff did not have any difficulty performing the routine and should not have any problem receiving recreation or showers. Yet the next day and on March 12, Vaughan and McCowan retaliated again by alleging Plaintiff failed to perform the procedure. Plaintiff he says he wrote letters to defendants Barksdale, who was the Warden, and Shortridge, who was Red Onion's PREA Manager, without effect.

## II.

Defendants filed a motion for summary judgment, arguing, inter alia, the defense of qualified immunity. A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); see Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (recognizing a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant). "Material facts" are those facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. Summary judgment is

4

inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248.

Even if there is no dispute as to the evidentiary facts, summary judgment is not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). Also, a plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment. Cloaninger, 555 F.3d at 336.

Qualified immunity permits "government officials performing discretionary functions . . . [to be] shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Because qualified immunity serves as an immunity from pretrial matters, I find it proper to first consider Defendants' defense of qualified immunity at the earliest opportunity and before addressing other affirmative defenses that may require a hearing. Consequently, I defer disposition of Defendants' exhaustion defense per 42 U.S.C. § 1997e(a) until after qualified immunity is resolved.

# III.
## A.

Plaintiff argues that Defendants violated due process guaranteed by the Fourteenth Amendment by not providing an adequate remedy for him to address the deprivation of recreation and showers seven times during a fifty-two day period in 2016. Defendants are entitled to qualified immunity and summary judgment for these claims.

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). A state regulation may create a protected liberty interest only if it provides "a basis for an interest or expectation" regarding a condition of confinement, Prieto, 780 F.3d at 250, and involves a condition that "impose[] atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Plaintiff's inability to have recreation or a shower seven times during a fifty-two day period in 2016 does not exceed a sentence in such an extreme way as to give rise to the protection of the Due Process Clause by its own force. See, e.g., Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997) (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food

6

was not so atypical as to impose significant hardship). Nor does that inability constitute an "atypical and significant" hardship in relation to the ordinary incidents of prison life as it is not an unusual circumstance in prison life that recreation and showers may be forfeited occasionally. See, e.g., id.; Rivera v. Mathena, No. 7:16CV00346, 2017 U.S. Dist. LEXIS 128447, at *19, 2017 WL 3485012, at *7 (W.D. Va. Aug. 14, 2017); Conn v. Stolle, No. 1:11cv758, 2011 U.S. Dist. LEXIS 84859, at *8, 2011 WL 3321136, at *3 (E.D. Va. July 29, 2011). Furthermore, Plaintiff has no constitutional right to access grievance procedures. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017); Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). Moreover, a claim that prison officials have not followed their own independent policies or procedures also does not state a constitutional claim. See, e.g., United States v. Caceres, 440 U.S. 741, 752-55 (1979); Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue). Accordingly, Defendants are entitled to qualified immunity and summary judgment for these claims.

**B.**

Plaintiff argues that the strip search procedure violates a right to privacy protected by the Fourth Amendment. The United States Constitution does not enumerate a fundamental privacy right, and the Supreme Court has never proclaimed a "general constitutional right to privacy." Whalen v. Roe, 429 U.S. 589, 607-08 (1977) (Stewart, J., concurring) (quoting Katz v. United States, 389 U.S. 347, 350 (1967)). However, the Supreme Court has extended a constitutional right to limited "zones of privacy," including private decisions involving marriage, procreation, contraception, abortion, and child raising and education.

For a prisoner, the zone of privacy includes the involuntary exposure of genitals to a person of the opposite sex. See, e.g., Lee v. Downs, 641 F.2d 1117, 1119 (4th Cir. 1981). Plaintiff does not allege that Vaughan, Stevens, McCowan, O'Quinn, or Lt. Gilbert is female, and consequently, the claim fails.

To the extent Plaintiff challenges the strip search procedure itself as an unreasonable search under the Fourth Amendment, he fails to disprove that the strip search procedure is not reasonably related to legitimate penological interests. A correctional policy or practice that substantially burdens an inmate's constitutional right is valid if it is reasonably related to legitimate penological interests. Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006). Whether a regulation is reasonably related depends on:

> (1) [W]hether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns.

Id. at 200 (citing Turner v. Safley, 482 U.S. 78, 89-92 (1987)); see Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (recognizing the prisoner has the burden to disprove the validity of a prison regulation pursuant to the Turner analysis).

Plaintiff argues that the strip search is unreasonable because staff could use a wand metal detector to check for objects hidden inside a rectum. Plaintiff's offered alternative is obviously inadequate as the wand metal detector would not detect a wide range of contraband not containing metal.

8

Plaintiff also believes the anal inspection is unreasonable because it is highly unlikely inmates at Red Onion would be able to obtain and secrete contraband while either escorted inside the prison or left alone in a shower or recreation cage. For example, Plaintiff explains that cameras and staff monitor the yard and that tall plexi-glass dividers surround the recreation cages. Yet even with these defenses, sometimes drones drop contraband from the sky, Gabriel v. DeVore, No. JKB-16-471, 2017 U.S. Dist. LEXIS 10743, at *2, 2017 WL 371801, at *1 (D. Md. Jan. 26, 2017), staff do not pay attention, Danser v. Stansberry, 772 F.3d 340, 343-44 (4th Cir. 2014), inmates hurt each other even if they act pleasant and respectful, Strickland v. Halsey, 638 F. App'x 179, 185-86 (4th Cir. 2015), and inmates still obtain shanks and stab prison staff, Douglas v. Johnson, No. 7:11cv468, 2013 U.S. Dist. LEXIS 37003, at *23-24, 2013 WL 1123849, at *7 (W.D. Va. Mar. 18, 2013). It is reasonable for prison officials to employ multiple techniques to not only detect contraband but also to pro-actively discourage attempts to obtain contraband.

"Correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." Florence v. Bd. of Chosen Freeholders of Cty. of Burlington, 566 U.S. 318, 328 (2012). The Supreme Court has advised circuit and district judges that they should not think of correctional policies as applying in the same peaceful and deliberative environment as their chambers. See, e.g., Graham v. Connor, 490 U.S. 386, 396 (1989). It would be too dangerous for correctional officers to expect only the most reformed behavior from inmates, especially at Red Onion where the state's most dangerous, disruptive, or recalcitrant inmates are housed.

Plaintiff fails to establish a violation of clearly established federal law. Without a violation of federal law, it is not my province in this case to determine what best practice prison

9

officials should enforce to maintain discipline and keep Red Onion free of contraband. See, e.g., Lewis v. Casey, 518 U.S. 343, 364 (1996) (Thomas, J., concurring) ("The Constitution charges federal judges with deciding cases and controversies, not with running state prisons."). "[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 128 (1977). Accordingly, Defendants' motion for summary judgment is granted for these claims.

## C.

Plaintiff argues that his experiences discussed in this lawsuit constitute the imposition of cruel and unusual punishment in violation of the Eighth Amendment. To succeed on an Eighth Amendment living conditions claim, a prisoner must prove that: (1) the deprivation of a basic human need was objectively "sufficiently serious" and (2) the prison official subjectively acted with deliberate indifference. Wilson v. Seiter, 501 U.S. 294, 298, 303 (1991).

Plaintiff fails to establish that the living conditions he experienced during the fifty-two day period in 2016 constitutes an objectively sufficiently serious deprivation. Nothing in the record supports an inference that Plaintiff was wholly deprived of life's basic necessities during that period or that he experienced serious injury or pain. See, e.g., Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993) (noting there is no cruel and unusual punishment unless plaintiff has suffered a serious injury). Plaintiff makes the unusual argument that he lost twenty-four pounds, dropping to 131 pounds from 155 pounds. However, this weight loss over an indeterminate period of time is not indicative of any serious injury or pain, and Plaintiff fails to establish a proximately cause or nexus between the weight loss and performing the strip search procedure or

not enjoying recreation and showers seven times during a fifty-two day period in 2016.[6]
Accordingly, Defendants are entitled to qualified immunity and summary judgment for these claims.

### D.

Plaintiff argues that Defendants' acts or omissions constitute retaliation in violation of federal law. The Court of Appeals for the Fourth Circuit held in April 2017 that it was clearly established to a reasonable prison official that, as of 2010, retaliation because of that inmate's administrative grievance would violate the First Amendment. Booker, 855 F.3d at 543-44. For a claim of retaliation to survive summary judgment, a plaintiff must produce sufficient evidence that (1) the speech was protected, (2) the alleged retaliatory action adversely affected the protected speech, and (3) a causal relationship existed between the protected speech and the retaliation. Raub v. Campbell, 785 F.3d 876, 885 (4th Cir. 2015), cited by Hoye v. Gilmore, 691 F. App'x 764, 765 (4th Cir. 2017). Bare assertions of retaliation do not establish a claim of constitutional dimension. Adams, 40 F.3d at 74-75.

"A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005). The plaintiff must allege sufficient facts to warrant concern that the alleged retaliation might have a chilling effect on the exercise of the right and show that he suffered more than de minimis

---

[6] Moreover, no reasonable trier of fact could be persuaded by this argument as the record presently exists. In an offender request form dated December 2016, Plaintiff attributed this weight loss in part to "an alleged lack of food." Furthermore, nothing in the record supports liberally construing a food claim on Plaintiff's behalf merely because I note this disparate fact from a grievance form.

11

inconvenience. Am. Civ. Liberties Union v. Wicomico Cnty., 999 F.2d 780, 785-86 n.6 (4th Cir. 1993).

"[I]t is not enough that the protected expression played a role or was a motivating factor in the retaliation; claimant must show that 'but for' the protected expression the [state actor] would not have taken the alleged retaliatory action." Id. (quoting Huang v. Bd. of Governors of the Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990)). Thus, "[i]n order to establish [a] causal connection, a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of her engaging in protected activity." Constantine, 411 F.3d at 501. Although it has been often repeated that an inmate's claim of retaliation should be regarded with skepticism, the record and all inferences therefrom must be drawn in an inmate's favor when adjudicating a prison official's motion for summary judgment. Compare Adams, 40 F.3d at 74, with Anderson, 477 U.S. at 248.

Per Booker, Plaintiff states a violation of law against Vaughan, Stevens, McCowan, and O'Quinn that had been clearly established before the events of this lawsuit. The alleged retaliation – being required to perform the strip search procedure unnecessarily, forsaking recreation and showers, and being charged with a false disciplinary charge – would likely deter a person of ordinary firmness confined in segregation from petitioning the government about unlawful retaliation.[7] As to knowledge, Plaintiff alleges that Stevens, Vaughn, and McCowan admitted to retaliating for the act of petitioning government officials. The alleged retaliation began once Plaintiff complained via the grievance procedure and prison hotline, and Defendants

---

[7] Plaintiff, not Defendants, filed documents purporting to be weekly logs detailing when staff allowed and did not allow Plaintiff to leave his cell for various occasions, including recreation and showers. Although this information would be relevant, probative, and material to the dispositive issues of the retaliation claims, there is no accompanying explanation from prison staff deciphering the various markings, strikeouts, times, initials, and related implications.

12

fail to distinguish a First Amendment right to petition the government for redress via a prison hotline from via grievances. See Booker, 855 F.3d at 538 ("[D]efendants 'can still be on notice that their conduct violates established law even in novel factual circumstances,' so long as the law provided 'fair warning' that their conduct was unconstitutional." (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002))); cf. Chapman v. Willis, No. 7:12cv389, 2013 U.S. Dist. LEXIS 74694, at *11-12, 2013 WL 2322947, at *4 (W.D. Va. May 28, 2013) (recognizing there is no independent action under § 1983 for PREA). Accordingly, disputes of material facts preclude qualified immunity and summary judgment about retaliation from Vaughan, Stevens, McCowan, and O'Quinn. See Buonocore v. Harris, 65 F.3d 347, 359 (4th Cir. 1995) (finding summary judgment not proper when resolution of qualified immunity question and claim itself both depend upon determining what happened).

Plaintiff also seeks to hold Warden Barksdale, Manager Shortridge, Lt. Gilbert, and Sgt. Hall liable as supervisors for Vaughan, Stevens, McCowan, and O'Quinn's alleged retaliation. I find that Plaintiff has established such claims against Lt. Gilbert and Sgt. Hall but not against Warden Barksdale or Manager Shortridge.

To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). To satisfy the requirements of the first element, a plaintiff must establish: (1) the supervisor's knowledge of (2)

13

conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. Id. at 373-74. A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." Id. at 373.

On January 20, Plaintiff told Lt. Gilbert and Sgt. Hall that he and other inmates in the pod were experiencing the same deprivations of recreation and showers, but Lt. Gilbert and Sgt. Hall purportedly refused to give Plaintiff an informal complaint form. Sgt. Hall explicitly told Plaintiff that he "believe[d] [his] officers" without any inquiry into Plaintiff's complaint. Lt. Gilbert responded to an informal complaint after Plaintiff obtained the form, watched Plaintiff perform the strip search procedure without error on March 10, reportedly acknowledged Plaintiff should not have any issue with passing the strip search procedure and receiving recreation and showers, and yet allowed the retaliation to continue unabated. Without Lt. Gilbert's or Sgt. Hall's alleged reckless disregard, at minimum, to their subordinates' conduct in the pod, Plaintiff and others would not have unnecessarily foregone recreation and showers.

In contrast, Plaintiff wrote a letter to the Warden and left a voicemail on the PREA hotline. The letter was forwarded from the Warden's office for investigation by the appropriate staff, and there is no inference that Manager Shortridge had any personal involvement with the receipt, dissemination, or investigation of the phone message. Accordingly, Warden Barksdale and Manager Shortridge are entitled to qualified immunity and summary judgment for the supervisory liability claims whereas Lt. Gilbert and Sgt. Hall are not.

**E.**

Defendants are entitled to qualified immunity and summary judgment as to the civil conspiracy claim. To establish a civil conspiracy under 42 U.S.C. § 1985(3), a plaintiff must demonstrate that defendants were "motivated by a specific class-based, invidiously discriminatory animus to [ ] deprive the plaintiff[s] of the equal enjoyment of rights secured by the law to all." Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995). Allegations of "parallel conduct and a bare assertion of a conspiracy" are not enough for a conspiracy claim to proceed. A Soc'y Without A Name v. Virginia, 655 F.3d 342, 347 (4th Cir. 2011).

Plaintiff only generally alleges that Defendants conspired to deprive him of recreation and showers as retaliation, and he fails to establish Defendants' "meeting of the minds" to support a conspiracy. See, e.g., Simmons, supra at 1377. Furthermore, he fails to specifically identify or describe a specific class-based, invidiously discriminatory animus.[8]

**IV.**

Plaintiff seeks to hold Defendants liable for both simple negligence and willful and wonton negligence. Defendants argued only that the court should decline to exercise supplemental jurisdiction. Because federal claims remain, this argument must fail. Accordingly, the state law claims shall continue in the absence of any additional argument.

**V.**

For the foregoing reasons, I grant in part and deny in part Defendants' motion for summary judgment. Now that qualified immunity has been resolved, Defendants may file another motion for summary judgment addressing, inter alia, any affirmative defense within

---

[8] Plaintiff alleges, as an motive alternative to retaliation, that the correctional officers did not want to take him to recreation and showers to reduce their workload.

15

forty-five days. Absent that motion, the Clerk shall set this matter for a bench trial in the Big Stone Gap Division.

**ENTER:** This 30th day of January, 2018.

/s/ Jackson L. Kiser
Senior United States District Judge